**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PRESTIGE PROPERTIES, INC.** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:12CV205-HSO-RHW** |
| | § | |
| | § | |
| **NATIONAL BUILDERS AND** | § | |
| **CONTRACTORS INSURANCE** | § | |
| **COMPANY, A RISK RETENTION** | § | |
| **GROUP, INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are a Motion for Summary Judgment [12] filed by

Defendant National Builders and Contractors Insurance Company, A Risk Retention

Group, Inc., and a Counter Motion for Partial Summary Judgment [17] filed by

Plaintiff Prestige Properties, Inc.  Both Motions are now fully briefed.  After due

consideration of the record, the submissions on file, and relevant legal authorities,

the Court finds that Defendant's Motion for Summary Judgment [12] should be

granted and that Plaintiff's Counter Motion for Partial Summary Judgment [17]

should be denied.  Plaintiff's claims asserted in this action will be dismissed with

prejudice.

## I. PROCEDURAL HISTORY

In early 2006, Plaintiff Prestige Properties, Inc. ["Prestige"], contracted with

an individual by the name of Lillian Elmore ["Elmore"] to perform repair work on

Elmore's home, which had been damaged by Hurricane Katrina.  Compl. [1] at 2.[1]

The work included replacing drywall.  *Id.*  According to the Complaint, Prestige

purchased the drywall from Bailey Lumber and delivered it to the Elmore home in

March 2006.  The drywall was completely installed by April 2006.  *Id.*

In December 2009, Elmore and more than 2,000 other plaintiffs filed in the

United States District Court for the Eastern District of Louisiana an omnibus class

action complaint in multi-district litigation ["Class Action Complaint"] asserting

claims against certain manufacturers of "Chinese drywall."  *Id.* at 3.  Other

defendants, including builders, were grouped into "subclasses."  *Id.*  Prestige

maintains that Elmore is the only plaintiff who has named Prestige as a defendant.

*Id.*  The Class Action Complaint claims that Prestige built Elmore's home and

"'directly or through agents, installed defective drywall . . . which has resulted in

harm and damages' to Elmore."  *Id.*  Prestige avers that "[t]he complaint further

alleges that chemical components of the drywall break down and produce noxious

gases that cause corrosion and damage to personal property, including appliances,

wiring and other objects with metal surfaces."  *Id.* at 3–4.  The Class Action

Complaint "alleges that exposure to these gases causes personal injury resulting

from eye irritation, sore throat, nausea, fatigue, shortness of breath, fluid in the

lungs and neurological harm."  *Id.* at 4.

The parties agree that at all material times Prestige was insured by a

commercial general liability policy [the "Policy"] issued by Defendant National

---

[1]The Court will reference its own CM/ECF generated page numbers when citing to
the record.

Builders and Contractors Insurance Company, a Risk Retention Group, Inc.

["NBCI"].  *Id.* at 1–2; NBCI's Mot. [12] at 1–2.  The Policy reads in relevant part as

follows:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>        * * *
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

Policy [12-18] at 13.

The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a

person, including death resulting from any of these at any time.  No emotional

distress is covered except emotional distress caused by bodily injury."  *Id.* at 28.

"Property damage" means either

> a. Physical injuries to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 31.

An "occurrence" is "an accident, including continuous and repeated exposure to

substantially the same general harmful conditions." *Id.* at 30.

A Total Pollution Exclusion Endorsement attached to the Policy provides that:

[t]his insurance does not apply to:
f.      Pollution.
        (1)     "Bodily injury" or "property damage" which would not have
                occurred in whole or in part but for the actual, alleged or
                threatened discharge, dispersal, seepage, migration, release
                or escape of "pollutants" at any time.
        (2)     Any loss, cost or expense arising out of any:
                (a)     Request, demand, order or statutory or regulatory
                        requirement that any insured or others test for,
                        monitor, clean up, remove, contain, treat, detoxify or
                        neutralize, or in any way respond to, or assess the
                        effects of "pollutants"; or
                (b)     Claim or suit by or on behalf of a governmental
                        authority for damages because of testing for,
                        monitoring, cleaning up, removing, containing,
                        treating, detoxifying or neutralizing, or in any way
                        responding to, or assessing the effects of, "pollutants."

*Id.* at 37.

"'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant,

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 31.

Prestige made application under the Policy with NBCI for the defense and

indemnity of the claims asserted by Elmore.  NBCI denied coverage.  Compl. [1] at 4.

Prestige filed its Complaint [1] against NBCI on June 28, 2012, invoking this Court's

diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *Id.* at 2.  The Complaint

advances claims against NBCI for breach of contact and tortious breach of contract.

*Id.* at 5–7.  Prestige seeks indemnity for any judgment rendered against it in the

Elmore MDL matter, "litigation and investigation damages in the sum of

$100,000.00 or greater," exemplary and punitive damages, attorneys' fees, and costs. *Id.* at 7–8.

NBCI has filed a Motion for Summary Judgment [12] seeking dismissal of Prestige's claims.  Prestige has filed a Counter Motion for Partial Summary Judgment [18] asking the Court to find that coverage exists and grant summary judgment in its favor on the breach of contract claim.  The central question posed by both Motions is whether the "Total Pollution Exclusion Endorsement" operates to exclude Prestige's claim for defense and indemnity related to Elmore's lawsuit.  *See* Policy [12-18] at 15–16.

## II.  DISCUSSION

A.    Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "There is no genuine dispute if the record, taken as a whole, could not lead a rational trier-of-fact to find for the non-moving party."  *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013) (citation omitted).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  In deciding whether summary judgment is appropriate, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible

inferences in favor of the non-moving party."  *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

B.      Applicable Substantive Law

The Court has jurisdiction over this matter pursuant to diversity of citizenship under 28 U.S.C. § 1332.  "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  When sitting in diversity, courts usually apply the forum state's substantive law.  *See, e.g., Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013).   The Court therefore applies Mississippi substantive law to the present dispute.

Prestige maintains that Coverage A under the Policy applies, such that NBCI owes a duty to defend and indemnify Prestige against Elmore's claims.  NBCI argues that there is no coverage because the Pollution Exclusion excludes Prestige's claim. Def.'s Mot. [12] at 2; *see also* Policy [12-18] at 15–16.[2]  Contract interpretation and construction rules apply to the interpretation of insurance policies.  *Southern Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013).  At the summary judgment stage, the Court should first determine whether a policy is ambiguous.  *Id.* at 744 n.3.  "Mere disagreement as to the meaning of a policy

---

[2]NBCI's Motion addresses Coverage A and Coverage B under the Policy; however, Prestige is only seeking relief under Coverage A.  Therefore, the Court need not address Coverage B, which involves personal and advertising injury liability.  Policy [12-18] at 18–20.  Even if Prestige had sought coverage under this portion of the Policy, a plain reading of the Policy and Prestige's Complaint reveals that Coverage B is inapplicable.

provision does not render the policy ambiguous." *Id.* at 745 (citations omitted).

"[W]hen a contract is clear and unambiguous to [sic] its wording, its meaning and

effect are matters of law." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 717

(Miss. 2004). "Like any other contract, if an insurance contract is plain and

unambiguous, it should be construed as written." *Id.* (citations omitted). "Language

in exclusionary clauses must be 'clear and unmistakable,' as those clauses are

strictly interpreted." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss.

2009) (quoting *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss.

2008)).

"An insurer has an absolute duty to defend those claims against the insured

covered by the insurance policy." *Southern Healthcare Servs.*, 110 So. 3d at 747

(citation omitted). The Mississippi Supreme Court has explained that

> an insurance company's duty to defend its insureds derives neither from
> common law nor statute, but rather *from the provisions of its policy*, that
> is, its insurance contract with its insured. It is a matter of contractual
> agreement. Absent a higher obligation created by statute, an insurance
> company's duty to defend is neither greater nor broader than the duty to
> comply with its other contractual obligations. That is not to say an
> insurance company can ignore its duty to defend where it has agreed to
> defend its insureds for covered claims, and the allegations of a complaint
> reasonably bring a claim within the coverage of its policy. The duty of
> good faith and fair dealing attends all contracts interpreted under
> Mississippi law. *See* Miss. Code Ann. § 75–1–203; *University of Southern
> Mississippi v. Williams*, 891 So. 2d 160, 170 (Miss. 2004).
>
> An insurance company's duty to defend its insured is triggered when it
> becomes aware that a complaint has been filed which contains reasonable,
> plausible allegations of conduct covered by the policy. However, no duty
> to defend arises when the claims fall outside the policy's coverage . . . .

*Id.* (emphasis in original) (quoting *Baker Donelson Bearman & Caldwell, P.C. v.
Muirhead*, 920 So. 2d 440, 450–51 (Miss. 2006)).

C.      Whether the Policy Affords Coverage

The Class Action Complaint lists Elmore as "participating as a class representative in the class and subclasses as set forth in the schedules accompanying this complaint which are incorporated herein by reference."  Class Action Compl. [12-8] at 14–15; *see also* Schedule 3 to Class Action Compl. [12-16] at 39.  The Class Action Complaint alleges that Prestige "built certain Subclass Members' homes and, directly or through agents, installed defective drywall in these homes, which has resulted in harm and damages to Subclass members as described herein."  Class Action Compl. [12-9] at 26.  Some of the specific allegations made against builders such as Prestige are that they "materially breached their contracts by providing Subclass Members with defective homes; to wit, the homes contained drywall that is inherently defective because it emits various sulfide and other noxious gases through off-gassing that causes harm and damage as described herein."  Class Action Compl. [12-11] at 46.

The drywall is allegedly "defective" because "the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall."  *Id.* at 6.  "Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property)."  *Id.*  The Class Action Complaint contends that "[e]xposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall,

causes personal injury resulting in eye irritation, sore throat and cough, nausea,

fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Id.*

NBCI contends that the Total Pollution Exclusion Endorsement excludes any

coverage that would otherwise be available to Prestige under the Policy.  According

to the Endorsement,

> [t]his insurance does not apply to:
>
> f.    Pollution.
>       (1)    "Bodily injury" or "property damage" which would not have
>              occurred in whole or in part but for the actual, alleged or
>              threatened discharge, dispersal, seepage, migration, release
>              or escape of "pollutants" at any time.

Policy [12-18] at 37.

"'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant,

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 31.

While there are no Mississippi state court cases directly on point, NBCI cites

in support of its Motion [12] authority from other courts which have applied nearly

identical or similar pollution exclusions to bar recovery under similar facts.  Def.'s

Mem. [13] at 10–14 (citing *American States Ins. Co. v. Nethery*, 79 F.3d 473 (5th Cir.

1996); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010)).  NBCI also

cites two Southern District of Mississippi cases where this Court excluded coverage

under a "contamination" exclusion in a homeowner's policy for damages resulting

from Chinese drywall.  *Id.* at 10–12 (citing *Lopez v. Shelter Ins. Co.*, 833 F. Supp. 2d

613 (S.D. Miss. 2011); *Bishop v. Alfa Mut. Ins. Co.*, 796 F. Supp. 2d 814, 821-822

(S.D. Miss. 2011)).

In *American States,* the United States Court of Appeals for the Fifth Circuit

addressed a situation in which Nethery hired  DAPA, Inc., to paint interior portions

of her home and replace sections of the floor.  She had contracted for the repairs to

be made using special paint and glue that would be "non-toxic" to her due to an

allergic condition.  *American States Ins. Co.*, 79 F.3d at 475.  After DAPA used

industry standard paint and glue, Nethery filed suit in state court.  DAPA made

demand upon American States for defense and coverage.  American States defended

the claim under a reservation of rights, and filed a declaratory judgment action in

district court against Nethery, DAPA, and others seeking a declaration of rights

under its policy relating to Nethery's claim.  After the district court granted in part

and denied in part American States' motion for summary judgment, American States

appealed, arguing that an absolute pollution exclusion to the policy barred the claim.

> The policy in *American States* did not apply to:
>
> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations . . . if the pollutants are brought on or to the premises, site or location in connection with such operations by the insured, contractor or subcontractor . . . .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

*Id.* at 475.

The Fifth Circuit made an "*Erie* guess" as to how Mississippi courts would interpret

the policy and held that "[t]he paint and glue fumes fall under the definition of

gaseous substances, vapors, and fumes, while the [chemical to which Nethery was allergic] in the paint and glue is plainly a chemical." *Id.* at 475–76. The Fifth Circuit reversed the district court's decision and rendered judgment in American States' favor. *Id.* at 478.

The Court notes the existence of recent persuasive authority from other courts that have considered nearly identical pollution exclusions and found that damages caused by gases from Chinese drywall were excluded from coverage. In *Evanston Ins. Co. v. Germano*, 514 F. App'x 362 (4th Cir. 2013), the Fourth Circuit considered a pollution exclusion in commercial general liability policies for any damage stemming from "pollutants," where the definition of the term "pollutants" was nearly identical to the one contained in the Policy in this case. *Id.*[3] The Fourth Circuit concluded that, under Virginia law, the sulfuric gases emanating from Chinese-manufactured drywall were "pollutants" under the language of the policies such that plaintiffs were not entitled to recover.

*Evanston* relied heavily upon *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321 (Va. 2012). *TravCo* contained a pollution exclusion also nearly identical to the one in this

---

[3]"This insurance does not apply to: . . . 'Bodily injury' or 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." *Evanston Ins. Co. v. Germano*, 2:10-cv-00312-RAJ-TEM, Complaint [1] at 12–13 (E.D. Va. June 29, 2010). "Pollutants" were defined as "any solid, liquid gaseous [sic] or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, electromagnetic fields and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* at 13.

case.[4]   Upon certification from the Fourth Circuit, the Virginia Supreme Court

determined that the sulfuric gases in the Chinese drywall constituted a pollutant

falling within the purview of the exclusion.  The pollution exclusion unambiguously

excluded from coverage any damage resulting from the emission of gas from the

drywall.  *Id.* at 330.  NBCI maintains that this Court has previously relied upon

*TravCo* in considering a contamination exclusion within an insurance policy.  Def.'s

Mem. [13] at 10–12 (citing *Bishop*, 796 F. Supp. 2d at 821–22).  In *Bishop*, this Court

found that the sulfur gas released by the Chinese drywall into the plaintiff's home fit

within the definition of "contamination" such that the contamination exclusion there

precluded coverage.  *Bishop*, 796 F. Supp. 2d at 822.[5]

      In *Granite State Ins. Co. v. American Bldg. Materials, Inc.*, 504 F. App'x 815

(11th Cir. 2013), the Eleventh Circuit determined that  sulfide gas released by

defective Chinese drywall fit within the definition of a pollutant because it is a

"gaseous . . . irritant or contaminant" such that damage caused by Chinese drywall

fell within the scope of pollution exclusions under both Massachusetts and Florida

law.  Other courts faced with similar exclusions and facts have reached the same

---

      [4]The policy in *TravCo* provided that Travco did not insure for loss caused by:
"[d]ischarge, dispersal, seepage, migration, release or escape of pollutants unless the
discharge, dispersal, seepage, migration, release or escape is itself caused by peril insured
against under Coverage C."  *TravCo*, 736 S.E.2d at 329.  The policy further provided that
"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including
smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to
be recycled, reconditioned or claimed."  *Id.*

      [5]The policy in *Bishop* excluded coverage for "any loss to the property . . . which is
directly or indirectly caused by one of more of (certain listed) perils, including, in pertinent
part: . . . contamination . . . ."  *Bishop*, 796 F. Supp. 2d at 817.

result.  *See, e.g., Penn. Nat. Mut. Cas. Ins. Co. v. Snead Door, LLC*, No. 4:12-CV-3731-VEH, 2013 WL 550483, \*6 (N.D. Ala. Feb. 12, 2013); *First Specialty Ins. Corp. v. Milton Const. Co.*, No. 12-20116-Civ., 2012 WL 2912713, \*5 (S.D. Fla. July 16, 2012); *QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.*, No. 10-456-CG-N, 2012 WL 413968, \*7 (S.D. Ala. Feb. 8, 2012).

Prestige relies heavily upon *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822 (E.D. La. 2010), in support of its argument that the pollution exclusion does not bar recovery under the Policy.  Pl.'s Mem. [16] at 10–15.  That case is distinguishable in that the policies at issue there were the respective plaintiffs' homeowners' insurance policies, rather than a commercial general liability Policy such as Prestige's.  The district court relied upon *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119 (La. 2000), where the Louisiana Supreme Court reviewed the "the origin of the total pollution exclusion, the history of pollution exclusions in Louisiana courts, and the position of the Louisiana Commissioner of Insurance on pollution/contamination exclusions," who had "expresse[d] concern about interpreting pollution and/or contamination exclusions broadly."  *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d at 840.  The district court reached its conclusion after analyzing the "*Doerr* considerations" which Louisiana courts were to evaluate in determining whether a total pollution exclusion was applicable in a particular case.  *Id.* at 841.

Under Mississippi law, the Court must utilize a somewhat different test and must enforce an unambiguous insurance contract as written based upon the four

corners of the document. In making its "*Erie* guess" as to how Mississippi courts

would interpret the Policy, the Court must consider the plain language of the Policy's

definition of the term "pollutants." The Policy defines pollutants as "any solid,

liquid, *gaseous* or thermal *irritant* or contaminant, including smoke, vapor, soot,

fumes, acids, alkalis, chemicals and waste." Policy [12-18] at 31 (emphasis added).

The Class Action Complaint claims that the drywall was "inherently defective

because it emits various sulfide and other noxious gases through off-gassing that

causes harm and damage as described herein." Class Action Compl. [12-11] at 46.

"Exposure to sulfide and other noxious gases, such as those emitted from

Defendants' drywall, causes personal injury resulting in eye irritation, sore throat

and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or

neurological harm." *Id.* at 6. The essence of these allegations is that gases were

released from the drywall and caused irritation to Elmore. As such, the "various

sulfide and other noxious gases" referenced in the Class Action Complaint are

encompassed by the Policy's definition of gaseous irritants. The weight of persuasive

authority further supports this conclusion.

Having reviewed the Policy, including the Total Pollution Exclusion

Endorsement, and as the use of the world "Total" in the Endorsement suggests, the

Court finds that the language is unambiguous. Applying the plain meaning of the

terms used in the definition of "pollutants" leads to the conclusion that this

definition encompasses the factual allegations raised in the Class Action Complaint,

namely that sulfide and other noxious gases emitted from the "defective drywall"

were the source of Elmore's damages.  Elmore's allegations asserted against Prestige in the Class Action Complaint are therefore not covered by the Policy based upon the Total Pollution Exclusion Endorsement.  In sum, the Total Pollution Exclusion Endorsement in the Policy negates NBCI's duty to defend or indemnify Prestige. NCBI's Motion for Summary Judgment should be granted, and Prestige's Counter Motion for Partial Summary Judgment should be denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [12] will be granted and Plaintiff's Counter Motion for Partial Summary Judgment [17] will be denied.  Plaintiff's claims will be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Summary Judgment [12] filed by Defendant National Builders and Contractors Insurance Company, A Risk Retention Group, Inc., is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Counter Motion for Partial Summary Judgment [17] filed by Plaintiff Prestige Properties, Inc., is **DENIED**.

A separate Final Judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 10th day of October, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE